**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

ELAINE WANG,                                         :
                                                     :
                    Plaintiff,                       :    Civil Action No. 1:21-cv-5745
                                                     :
v.                                                   :    **COMPLAINT FOR VIOLATIONS OF**
                                                     :    **SECTIONS 14(a) AND 20(a) OF THE**
MONMOUTH REAL ESTATE                                 :    **SECURITIES EXCHANGE ACT OF**
INVESTMENT CORPORATION, KIERAN                       :    **1934**
"KC" CONWAY, DANIEL D. CRONHEIM,                     :
CATHERINE B. ELFLEIN, BRIAN H.                       :    **JURY TRIAL DEMANDED**
HAIMM, NEAL HERSTIK, MATTHEW I.                      :
HIRSCH, EUGENE W. LANDY, MICHAEL                     :
P. LANDY, SAMUEL A. LANDY, KEVIN S.                  :
MILLER, GREGORY T. OTTO, SONAL                       :
PANDE, and SCOTT L. ROBINSON,                        :
                                                     :
                    Defendants.                      :
---------------------------------------------------------  :

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Monmouth Real Estate Investment

Corporation ("Monmouth or the "Company") and the members Monmouth's board of directors

(the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants")

for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the

"Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17

C.F.R. § 244.100, in connection with the proposed merger between Monmouth and Equity

Commonwealth, a Maryland real estate investment trust, and its affiliates ("Equity

Commonwealth").

2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on July 2, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Monmouth will merge with and into RS18 LLC, a Maryland limited liability company and a wholly owned subsidiary of Monmouth ("Merger Sub") with Merger Sub being the surviving entity (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Monmouth stockholder will receive 0.67 Equity Commonwealth shares (the "Merger Consideration").

3.     As discussed below, Defendants have asked Monmouth's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and CSCA Capital Advisors, LLC ("CSCA") in support of their fairness opinions.

4.     It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Monmouth's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the proxy solicitors for both Monmouth and Equity Commonwealth, D.F. King & Co., Inc. and Okapi Partners LLC, are headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Monmouth stocks and has held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant Kieran "KC" Conway has served as a member of the Board since 2018.

11.     Individual Defendant Daniel D. Cronheim has served as a member of the Board since 1989.

12.     Individual Defendant Catherine B. Elflein has served as a member of the Board since 2007.

13.     Individual Defendant Brian H. Haimm has served as a member of the Board since 2013 and is the Lead Independent Director.

14.     Individual Defendant Neal Herstik has served as a member of the Board since 2004.

15.     Individual Defendant Matthew I. Hirsch has served as a member of the Board since 2000.

16.     Individual Defendant Eugene W. Landy has served as a member of the Board since 1968 and is the Founder of the Company and Chairman of the Board.

17.     Individual Defendant Michael P. Landy has served as a member of the Board since 2007 and is the Company's President and Chief Executive Officer.

18.     Individual Defendant Samuel A. Landy has served as a member of the Board since 1989.

19.     Individual Defendant Kevin S. Miller has served as a member of the Board since 2017.

20.     Individual Defendant Gregory T. Otto has served as a member of the Board since 2017.

21.     Individual Defendant Sonal Pande has served as a member of the Board since 2020.

22.     Individual Defendant Scott L. Robinson has served as a member of the Board since 2015.

23.     Defendant Monmouth a Maryland corporation and maintains its principal offices at 101 Crawfords Corner Road, Suite 1404, Holmdel, New Jersey 07733.  The Company's stock trades on the New York Stock Exchange under the symbol "MNR."

24.     The defendants identified in paragraphs 10-22 are collectively referred to as the "Individual Defendants" or the "Board."

25.     The defendants identified in paragraphs 10-23 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

26.     Monmouth, founded in 1968, is one of the oldest public equity REITs in the world. We specialize in single tenant, net-leased industrial properties, subject to long-term leases, primarily to investment-grade tenants. Monmouth is a fully integrated and self-managed real estate company, whose property portfolio consists of 121 properties, containing a total of approximately 24.5 million rentable square feet, geographically diversified across 31 states. The Company's occupancy rate is 99.7%.

27.     On May 4, 2021, the Company and Equity Commonwealth jointly announced the Proposed Transaction:

> CHICAGO & HOLMDEL, N.J.--(BUSINESS WIRE)--Equity Commonwealth (NYSE: EQC) and Monmouth Real Estate Investment Corporation (NYSE: MNR), or Monmouth, today announced that they have entered into a definitive merger agreement by which Equity Commonwealth will acquire Monmouth in an all-stock transaction, valued at approximately $3.4 billion, including the assumption of debt. The combined company is expected to have a pro forma equity market capitalization of approximately $5.5 billion.
>
> Under the terms of the agreement, Monmouth shareholders will receive 0.67 shares of Equity Commonwealth stock for every share of Monmouth stock they own. Based on the closing price for Equity Commonwealth on May 4, 2021, this represents approximately $19.40 per Monmouth share. The merger agreement provides for Monmouth to declare and pay one additional regular quarterly common stock dividend of $0.18 per share without Equity Commonwealth paying a corresponding common dividend to its shareholders. Accordingly, the total consideration to be received by the Monmouth shareholders in the transaction is $19.58 per Monmouth share.

Equity Commonwealth and Monmouth shareholders are expected to own approximately 65% and 35%, respectively, of the pro forma company following the close of the transaction.

"The transaction provides Equity Commonwealth with a high-quality, net-leased industrial business with stable cash flows while preserving EQC's balance sheet capacity for future acquisitions," said Sam Zell, Chairman of the Board of Equity Commonwealth.

"Monmouth provides an attractive and scalable platform," said David Helfand, President, Chief Executive Officer and Trustee of Equity Commonwealth. "With significant cash and balance sheet capacity, we have the ability to grow the platform and create long-term value for shareholders."

Monmouth's portfolio is comprised of 120 properties totaling 24.5 million square feet.[1] In addition, Monmouth has 6 properties totaling 1.8 million square feet under contract and leased to investment grade tenants. Closings for these acquisitions are expected in 2021 and 2022.

"Following a strategic alternatives process, our Board unanimously determined that the merger with Equity Commonwealth is the best outcome to maximize value for Monmouth stockholders," said Michael P. Landy, President and CEO of Monmouth. "Our stockholders will benefit from Equity Commonwealth's preeminent leadership team, which has an exceptional track record of delivering shareholder value, its strong balance sheet and its focused strategy to build on Monmouth's over 50 years of success creating a market leading industrial REIT."

**<u>Strategic and Financial Rationale</u>**

- **Attractive entry point into a fast-growing sector with robust long-term fundamentals.** The transaction provides the companies' shareholders the opportunity to build a leading industrial business and participate in the long-term growth of the sector.
- **Balance of scale, stability and growth.** The income stability of the portfolio, coupled with Equity Commonwealth's sponsorship and strong balance sheet, is expected to provide the combined company with stable recurring cash flows and significant dry powder for future acquisitions.
- **High-quality properties.** The portfolio consists of single tenant, net-leased industrial assets, geographically located across 31 states

with a focus on the Eastern United States. Many properties are near airports, seaports, transportation hubs, and situated within or near major population centers, positioning the portfolio well to serve both the first and last mile of the supply chain. With a weighted average building age of 9.9 years, much of the portfolio consists of Class A logistics facilities, featuring modern specs and building features.

- **Fully-funded growth strategy.** Equity Commonwealth is well-positioned to execute on its growth strategy, which is not dependent on raising additional debt or equity capital. Upon closing of the acquisition, Equity Commonwealth is expected to have approximately $2.5 billion of pro forma cash on the balance sheet. Further, Equity Commonwealth plans to dispose of its four office properties totaling 1.5 million square feet and Monmouth's portfolio of marketable securities over time and reinvest the proceeds in future acquisitions.

- **Improved leverage.** Post-merger shareholders are expected to benefit from an improved leverage profile. Equity Commonwealth expects to pay $25 per share plus accrued distributions to cash out Monmouth's $550 million 6.125% Series C Redeemable Preferred Stock in connection with the merger. This is anticipated to create immediate savings of approximately $34 million per annum. Equity Commonwealth has a conservative financing strategy and anticipates long-term leverage targets to be in line with the industrial REIT sector.

- **Increased diversification over time.** For the three months ending March 31, 2021, Monmouth's largest tenant accounts for 55% of Monmouth's annual rent. Equity Commonwealth plans to diversify its tenant base and industry concentrations as the portfolio grows.

## Leadership and Governance

Strong corporate governance will continue to be paramount at Equity Commonwealth. The company will continue to be led by President and Chief Executive Officer David Helfand and the existing senior management team. Upon closing, the number of trustees on Equity Commonwealth's board will be expanded to 10, with two individuals designated by Monmouth's board. Sam Zell will remain the Chairman of the Board of Trustees.

## Dividend Policy

Monmouth plans to continue to pay its regular quarterly common stock dividend and its Series C Cumulative Redeemable Preferred Stock dividend between signing and closing of the transaction.

Equity Commonwealth expects to begin paying a quarterly dividend after the transaction has closed. The Board of Trustees will determine the timing and amount of the dividend.

**Transaction Timing & Approval**

The transaction is expected to close during the second half of 2021, subject to customary closing conditions, including approval by the common shareholders of both Equity Commonwealth and Monmouth.

The Board of Trustees of Equity Commonwealth and the Board of Directors of Monmouth Real Estate have each unanimously approved the transaction.

**Advisors**

Goldman Sachs & Co. LLC is acting as financial advisor and Fried, Frank, Harris, Shriver and Jacobson LLP is serving as legal advisor to Equity Commonwealth. J.P. Morgan Securities LLC and CS Capital Advisors, LLC are acting as financial advisors and Stroock & Stroock & Lavan LLP is serving as legal advisor to Monmouth.

\* \* \*

28.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Monmouth's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

29.     On July 2, 2021, Monmouth and Equity Commonwealth jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.   The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to

the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

30.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections" and "Equity Commonwealth Projections") and provided them to the Board and the Financial Advisors by management of both Monmouth and Equity Commonwealth with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

31.     For the *EQC on a Stand-alone Basis* projections, *MNR on a Stand-alone Basis* projections, and the *Combined Company on a Pro Forma Basis Giving Effect to the Merger* projections prepared by Equity Commonwealth, the Registration Statement provides values for

non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2023: EBITDA; Adjusted EBITDA; Funds from Operations; and Unlevered Free Cash Flows as calculated by each of the Company's and Equity Commonwealth's financial advisors, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

32.     For the *MNR Multi-Year Projected Financial Information* prepared by Monmouth, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2025: EBITDA; Cash Net Operating Income; Adjusted EBITDA, Funds from Operations per share; and Adjusted Funds from Operations per share, as calculated by each of the Company's and Equity Commonwealth's financial advisors, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

33.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

34.     The SEC has noted that:

companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

35.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

36.     With respect to J.P. Morgan's *Public Trading Multiples* analysis for Monmouth, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by J.P. Morgan in the analysis.

37.     With respect to J.P. Morgan's *Transaction Multiples Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the Gramercy Acquisition and the reason only one transaction was observed by J.P. Morgan.

38.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the unlevered free cash flows for Monmouth, (ii) the range of terminal values for Monmouth and Equity Commonwealth; (iii) the inputs and assumptions underlying the use of the range of perpetual growth rates of 1.75% to 2.25% for Monmouth and 2.00% to 2.50% for Equity Commonwealth; (iv) the estimates of the net operating income for

Equity Commonwealth at the end of fiscal-year 2025; (v) the inputs and assumptions underlying the use of the discount rates ranging from 6.25% to 6.75% for Monmouth and 6.50% to 7.00% for Equity Commonwealth; (vi) the weighted average cost of capital of Monmouth and Equity Commonwealth; and (vii) the net debt and other adjustments for Monmouth and Equity Commonwealth as of March 31, 2021.

39.     With respect to CSCA's *Selected Comparable Companies Analysis* for Monmouth and Equity Commonwealth, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by CSCA in the analysis.

40.     With respect to CSCA's *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by CSCA in the analysis.

41.     With respect to CSCA's *Capitalization Rate Valuation Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the use of cash capitalization rates from 4.75% to 5.50% for Monmouth and 4.50% to 6.00% for Equity Commonwealth

42.     With respect to CSCA's *Premiums Paid Analysis*, the Registration Statement fails to disclose: (i) the transactions selected for the analysis; (ii) the premiums observed for each of the transactions reviewed; (iii) the date of announcement for each transactions; (iv) the closing date of each transaction.

43.     With respect to CSCA's *Discounted Cash Flow Analysis* for Monmouth, the Registration Statement fails to disclose: (i) the unlevered free cash flows for Monmouth, (ii) the range of terminal values for Monmouth; (iii) the inputs and assumptions underlying the use of the range of EBITDA multiples ranging from 18.0x to 22.0x; (iv) the inputs and assumptions

underlying the use of the discount rates ranging from 6.50% to 7.00%; and (v) the weighted average cost of capital of Monmouth.

44.     With respect to CSCA's *Discounted Cash Flow Analysis* for Equity Commonwealth, the Registration Statement fails to disclose: (i) the unlevered free cash flows for Equity Commonwealth for fiscal years ending 2024 and 2025, (ii) the range of terminal values for Equity Commonwealth; (iii) the inputs and assumptions underlying the use of the range of EBITDA multiples ranging from 14.0x to 16.0x; (iv) the inputs and assumptions underlying the use of the discount rates ranging from 6.75% to 7.25%; and (v) the weighted average cost of capital of Equity Commonwealth.

45.     With respect to CSCA's retention, the Registration Statement fails to disclose whether CSCA provided Equity Commonwealth with any financial advisory or investment banking services for Equity Commonwealth in the two years preceding the date of its opinion to the Company.

46.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

49.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

50.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

51.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes

negligence.   Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

52.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **COUNT II**

### **On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Monmouth within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Monmouth, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Monmouth, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Monmouth, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

57.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: July 2, 2021                          **MELWANI & CHAN LLP**

By:   */s/ Gloria Kui Melwani*

Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*